NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC., | : | |
| Plaintiff, | : | Civ. No. 06-4247 (DRD) |
| v. | : | |
| COMTEL TECHNOLOGIES, INC., and SHMUEL MANOR, | : | **O P I N I O N** |
| Defendants. | : | |

---

Joel A. Siegel, Esq.
70 Lafayette Street
New York, New York 10013

31 Station Avenue
Somerdale, New Jersey 08083

*Attorney for Plaintiff*


Edward Sponzilli, Esq.
NORRIS, McLAUGHLIN & MARCUS, PA
721 Route 202-206 North
Somerville, New Jersey 08876

*Attorneys for Defendants*


**DEBEVOISE, Senior District Judge**

## I. PROCEDURAL HISTORY

1

Plaintiff Merrill Lynch Business Financial Services Inc. ("Merrill Lynch" or "Plaintiff") filed the complaint in this action on September 11, 2006 (the "Complaint"). The Complaint alleges that defendants Comtel Technologies, Inc. ("Comtel") and Shmuel Manor ("Manor")[1] (collectively, "Defendants") failed to repay a debt that is owed as the result of a loan and security agreement between the parties. Plaintiff claims that the amount of indebtedness, which includes interest due under the loan, exclusive of further accrued interest and attorney's fees, is $509,997.68. Defendants filed an answer to the Complaint on October 18, 2006 (the "Answer"). Plaintiff now moves for summary judgment. For the reasons stated below, Plaintiff's motion will be granted.

## II.  BACKGROUND

On April 27, 2000, Comtel and Merrill Lynch entered into a WCMA Loan and Security Agreement (the "WCMA Agreement") whereby Merrill Lynch granted Comtel a $200,000 line of credit, which was later increased to $500,000. The WCMA Agreement states in part:

> FOR VALUE RECEIVED, Customer hereby promises to pay to the order of MLBFS, at the times and in the manner set forth in the Loan Agreement, or in such other manner and at such place as MLBFS may hereafter designate in writing, the following: (a) on the Maturity Date, or if earlier, on the date of termination of the WCMA Line of Credit, the WCMA Loan Balance; (b) interest at the Interest Rate (or, if applicable, at the Default Interest Rate) on the outstanding WCMA Loan Balance, from and including the date on which the initial WCMA Loan is made until the date of payment of all WCMA Loans in full; and (c) on demand, all other sums payable pursuant to the Loan Agreement, including, but not limited to, the periodic Line Fee. Except as otherwise expressly set forth herein, Customer hereby waives presentment, demand for payment, protest and notice of protest, notice of dishonor, notice of acceleration, notice of intent to

---

[1] Defendant Manor is the principal of Comtel.

>accelerate and all other notices and formalities in connection with this WCMA Promissory Note and the Loan Agreement.

_____The parties also executed an "Unconditional Guaranty" whereby Defendants "unconditionally guarantee[d]" "(i) the prompt and full payment when due . . . (ii) the prompt, full and faithful performance and discharge . . . of each and every other covenant and warranty . . . set forth in the Guaranteed Documents, and (iii) the prompt and full payment and performance of all other indebtedness, liabilities and obligations . . ." (the "Unconditional Guaranty").

Additionally, the General Terms Applicable to the WCMA Loan and Security Agreement provide: "[t]o secure payment and performance of the Obligations, Customer hereby pledges, assigns, transfers and sets over to MLBFS, and grants to MLBFS first liens and security interests in and upon all of the Collateral, subject only to Permitted Liens." The term "Collateral" is defined in the WCMA Agreement as "all Accounts, Chattel Paper, Contract Rights, Inventory, Equipment, Fixtures, General Intangibles, Deposit Accounts, Documents, Instrument, Investment Property and Financial Assets of Customer . . ."

The WCMA Agreement and Unconditional Guaranty also provide for the payment of costs and expenses associated with collection or enforcement. The Unconditional Guaranty states: "[g]uarantor further agrees to pay all reasonable costs and expenses (including, but not limited to, court costs and reasonable attorneys' fees) paid or incurred by MLBFS in endeavoring to collect or enforce performance of any of the Obligations, or in enforcing this Guaranty."

The "Initial Maturity Date," which was defined in the WCMA Agreement as "the first date upon which the WCMA Line of Credit will expire," was April 30, 2001. On May 9, 2001, the line of credit was extended to April 30, 2002. On June 26, 2002, the line of credit was

increased to $500,000 and the maturity date was extended to April 30, 2003.[2]  Subsequently, the line of credit was extended on June 24, 2003 to July 30, 2004, on August 31, 2004 to July 31, 2005, and by notice dated May 17, 2006, to May 31, 2006.

On June 1, 2006, Merrill Lynch sent a "Notice of Non-Renewal and Maturity Date Events" to Manor notifying Manor that it had elected not to renew the line of credit.  In that notice, Merrill Lynch also extended the Maturity Date to June 30, 2006 so that Defendants could "obtain alternative financing or otherwise access funds sufficient to pay off the Obligations."  On June 30, 2006, Merrill Lynch sent Manor a "Formal Payment Demand" demanding payment of the outstanding loan balance.

In its Answer, Comtel admits that despite Plaintiff's notice of default and demand for payment, it has not repaid the indebtedness.  (Answer ¶¶ 10, 12).  Comtel also asserts two affirmative defenses in its Answer: (1) Plaintiff has failed to state a cause of action on which relief can be granted; and (2) Defendants are entitled to an accounting setting forth payments made to the account by Defendants and charges assessed by Plaintiff.  (Answer 4).

### III.  DISCUSSION

**A.     Standard of Review**

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could

---

[2]     Merrill Lynch filed a UCC Financing Statement with the State of New York on June 28, 2002.

return a verdict for the nonmoving party," See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255).

**B.**     **The Agreement**

A plaintiff must demonstrate the following to be entitled to a judgment on a guaranty:

> 1) execution of the guarantee by the guarantor (i.e., that it was the defendant who signed the guarantee);
> 2) the principal obligation and terms of the guaranty;
> 3) the lender's reliance on the guaranty in extending monies to the borrower;
> 4) default by the principal obligator;
> 5) written demand for payment on the guarantee;
> 6) failure of the guarantor to pay upon written demand . . .

United States v. DelGuercio, 818 F. Supp. 725, 727-28 (D.N.J. 1993).

Here, Plaintiff has demonstrated that the parties entered into an agreement and unconditional guaranty whereby Defendants promised, *inter alia*, prompt repayment of the loan in full.  It is clear that Plaintiff relied on this guaranty in extending monies to the Defendants.  Finally, Defendants admit that they have not repaid the indebtedness, despite written demand.

In response, Defendants argue that they are entitled to an accounting. However, the evidence shows that Defendants were provided monthly account statements which documented loan advances as well as repayment. Therefore, because there is no genuine issue of material fact, summary judgment will be granted.

In addition to the money judgment, Plaintiff also requests possession of the collateral designated in the WCMA Agreement and collection costs, including attorney's fees. N.J.S.A. 12A:9-609 provides:

> (a) Possession; rendering equipment unusable; disposition on debtor's premises. After default, a secured party:
> (1) may take possession of the collateral . . .

N.J.S.A. 12A:9-609. Because this Court has found that Defendants have defaulted on the WCMA Agreement, Plaintiff is entitled to possession of the collateral as it is defined in the WCMA Agreeement.

Additionally, under New Jersey law, "[a]s a general rule, contracts which permit the aggrieved party to recover fixed or reasonable attorney's fees as part of his or her damages are enforceable unless some larger public policy mandates a contrary result." Belfer v. Merling, 322 N.J. Super. 124, 141 (App. Div. 1999) (citing Center Grove Assocs. v. Hoerr, 146 N.J. Super. 472, 474 (App. Div. 1977)). However, the fee arrangement is subject to judicial review as to its reasonableness. Id. That is because a claim for attorney's fees "is an element of damages which must be proved in the same manner as any other item and which must be assessed by the finder of fact as a matter of right and in the actual amount established by the proofs." Id.

Here, the contractual documents provide for the payment of costs and reasonable

6

attorney's fees incurred by Plaintiff in enforcing the WMCA Agreement and Unconditional Guaranty. Therefore, the Court will order the payment of costs and attorney's fees upon the submission of proofs as to the amounts incurred.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment will be granted. The court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: November 14, 2006